UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CLIFF MALBROUGH** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-8391** |
| **DARREL VANNOY, WARDEN** | **SECTION: "F"(5)** |

### REPORT AND RECOMMENDATION

Pro se petitioner, Cliff Malbrough, filed the above-captioned 28 U.S.C. § 2254 habeas petition with a motion to stay the action to allow him to complete exhaustion of his available state-court remedies. The matter is before the Court on Malbrough's Motion for Stay and Abeyance (Rec. Doc. 6). The federal petition and this motion were referred to the undersigned United States Magistrate Judge for issuance of findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.

In his motion to stay, Malbrough acknowledges that his federal petition contains claims that have not yet been adjudicated by the Louisiana Supreme Court.[1] He asserts that he filed the federal petition and motion to stay the proceedings "in order to preserve all of his claims." He urges the Court to hold the federal petition in abeyance pending resolution of his post-conviction claims before the state courts.

As instructed, the State filed a response to the motion for stay.[2] The State opposes

---

[1] Rec. Doc. 6.

[2] Rec. Doc. 11.

the requested stay because none of Malbrough's claims have been exhausted. The State also argues that his pending state-court post-conviction proceedings effectively tolled the federal limitations period. Malbrough filed a traverse to the State's response.[3]

In his federal petition, he raises 14 grounds for relief:

(1)    The sentences imposed were constitutionally excessive;

(2)    trial counsel was ineffective for failing to obtain experts and present testimony of defense witnesses;

(3)    trial counsel was ineffective for failing to present evidence of an alibi on the charge of sexual battery;

(4)    trial counsel was ineffective for failing to accept the court's offer of a mistrial following jury contamination;

(5)    trial counsel was ineffective for failing to object to the State's presentation of video evidence defense counsel had not previously seen;

(6)    appellate counsel was ineffective for failing to present all appealable issues;

(7)    appellate counsel was ineffective for suggesting that Malbrough's efforts to seek review by the Louisiana Supreme Court would not be successful;

(8)    the trial court improperly denied his motion for a mistrial after the jury received inadmissible evidence of other crimes;

(9)    the unsigned amended grand jury indictment was improper;

---

[3] Rec. Doc. 12.

(10) the State knowingly allowed perjured testimony to be presented by its witnesses;

(11) the State did not allow him to view all of the State's evidence against him before trial;

(12) the State improperly introduced video evidence he had not previously seen in violation of state law and his right to due process;

(13) the appellate court on direct appeal rendered a decision without the benefit of a complete record; and

(14) his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments were violated due to newly discovered evidence that the State's key witness recanted her trial testimony.

The first 13 claims for relief were presented to the state district court, the Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court (Writ No. 2018-KH-112). The Louisiana Supreme Court has not yet ruled on the pending writ application filed in January 2018. His last claim for relief is the subject of a second post-conviction relief application based on newly discovered evidence.[4] That application is still pending before the state district court. The state district court was prepared to hold an evidentiary hearing on his claim for relief, but the State is in the process of challenging the order setting the evidentiary hearing. The Louisiana First Circuit Court of Appeal denied the State's related writ application. The State asserts that it is currently preparing a writ application

---

[4] Rec. Doc. 1-16, p. 25 (Uniform Application for Post-Conviction Relief, 6/20/17).

to the Louisiana Supreme Court. Thus, the state district court has not yet ruled on the claim raised in his second application for post-conviction for relief.

In its current posture, the federal petition before the Court is fully unexhausted. However, as Malbrough's traverse notes, the Supreme Court's expected ruling would fully exhaust 13 of the 14 claims, resulting in a mixed petition. And Malbrough is still pursuing the newly discovered claim at the district-court level. That attempt has been opposed by the State. Thus, Malbrough requests a stay to preserve all 14 claims for relief for federal habeas review.

A petitioner seeking habeas corpus relief under 28 U.S.C. § 2254 must first exhaust his remedies in the state courts before seeking habeas corpus relief from the federal courts. *See* 28 U.S.C. § 2254(b)(1); *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519–20 (1982)); *Nobles v. Johnson*, 127 F.3d 409, 419 (5th Cir. 1997). As the United States Supreme Court has explained:

> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. Under our federal system, the federal and state courts are equally bound to guard and protect rights secured by the Constitution. Because it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation, federal courts apply the doctrine of comity, which teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.

*Rose v. Lundy*, 455 U.S. at 518 (citations, footnote, quotation marks, and brackets omitted). In *Lundy*, the Supreme Court required dismissal of mixed petitions without prejudice to

accomplish total exhaustion.

However, following the enactment of the AEDPA, with the imposition of a one-year federal limitations period and the interplay with Lundy's dismissal requirement, the Supreme Court in *Rhines v. Weber*, 544 U.S. 269 (2005), recognized that, in limited circumstances, it is appropriate for a federal district court to stay habeas corpus proceedings. The Court set forth key considerations for the stay-and-abeyance procedure:

> Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless. *Cf.* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").
>
> Even where stay and abeyance is appropriate, the district court's discretion in structuring the stay is limited by the timeliness concerns reflected in AEDPA. A mixed petition should not be stayed indefinitely.... Without time limits, petitioners could frustrate AEDPA's goal of finality by dragging out indefinitely their federal habeas review. Thus, district courts should place reasonable time limits on a petitioner's trip to state court and back. *See, e.g., Zarvela*, 254 F.3d, at 381 ("[District courts] should explicitly condition the stay on the prisoner's pursuing state court remedies within a brief interval, normally 30 days, after the stay is entered and returning to federal court within a similarly brief interval, normally 30 days after state court exhaustion is completed"). And if a petitioner engages in abusive litigation tactics or intentional delay, the district court should not grant him a stay at all. *See id.*, at 380-381.
>
> On the other hand, it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. In such circumstances, the district court should stay, rather than dismiss, the mixed petition. *See Lundy*, 455 U.S., at 522, 102 S.Ct. 1198 (the total exhaustion requirement was not intended to "unreasonably impair

> the prisoner's right to relief"). In such a case, the petitioner's interest in obtaining federal review of his claims outweighs the competing interests in finality and speedy resolution of federal petitions. For the same reason, if a petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief. *See id.*, at 520, 102 S.Ct. 1198 (plurality opinion) ("[A petitioner] can always amend the petition to delete the unexhausted claims, rather than returning to state court to exhaust all of his claims").

*Rhines*, 544 U.S. at 277-78.

The State argues that Malbrough is not entitled to a stay because this is not a mixed petition. The United States Fifth Circuit Court of Appeals has not addressed the criteria for a stay in the context of a fully unexhausted petition. *Hughes v. Cain*, Civ. Action No. 15-0795, 2016 WL 4203869, at *3 (M.D. La. June 13, 2016). However, other circuits have considered the scenario and applied the stay-and-abeyance procedure to fully unexhausted federal petitions. *See, e.g.*, *Mena v. Long*, 813 F.3d 907, 910 (9th Cir. 2016) (citing Third, Seventh and Tenth Circuit cases). Those circuits refer to the procedure described in *Rhines v. Weber*, 544 U.S. 269, 276, 125 S. Ct. 1528, 161 L.Ed. 2d 440 (2005), which holds that a stay is available for mixed petitions containing both exhausted and unexhausted claims only if the petitioner establishes that (1) good cause exists for his failure to exhaust his claims in state court; (2) the unexhausted claims are potentially meritorious; and (3) there is no indication that the petitioner intentionally engaged in dilatory litigation tactics. *See, e.g.*, *Wooten v. Kirkland*, 540 F.3d 1019, 1023 (9th Cir. 2008) (citing *Rhines*, 544 U.S. at 278). Here, the State offers nothing to support its position, if urged, that a stay is not available to

Malbrough under the circumstances if he satisfies the *Rhines* criteria. Nor does the State's response consider or discuss the impending Supreme Court ruling on Malbrough's supervisory writ application raising 13 of the 14 claims, or its impact on the instant proceedings (*i.e.*, altering the nature of this federal petition and resulting in a mixed petition). *See Thompson v. Hooper*, Civ. Action No. 17-11674, 2018 WL 2013105, at *4 (E.D. La. April 30, 2018) (applying *Rhines* analysis and staying fully exhausted petition where petitioner had an unexhausted claim to later consolidate in the proceedings after he pursued the claim in the state courts, and had he sought to amend to include the claim, it would have been a mixed petition).

Indeed, the *Rhines* factors should be applied in this case and weigh in favor of staying the proceedings. First, Malbrough has good cause for not having exhausted his claims for relief. He initiated post-conviction proceedings in April 2015. He cannot dictate when the Louisiana Supreme Court will rule on his supervisory writ application, which has been pending for about one year. Furthermore, his attempt to have his newly discovered claim heard by the state courts has been delayed by the State's opposition and related writ applications. Second, the Court cannot say definitively at this time that his unexhausted claims are not potentially meritorious. Although the State has opposed the newest claim raised in the state district court on grounds that it asserts actual innocence, which is not a cognizable claim, the parameters of that claim have yet to be decided by the state courts. Third, he appears to have diligently pursued his post-conviction claims, including his recent due-process claim based on newly discovered evidence that the victim recanted her trial

7

testimony. There is absolutely no indication that he has intentionally engaged in dilatory litigation tactics. Malbrough has satisfied the *Rhines* criteria.

The State also argues that Malbrough should not be entitled to a stay because his post-conviction proceedings effectively tolled the federal one-year limitations.[5] The *Rhines* analysis focuses on good cause for failure to exhaust the claims in state court, not good cause for a stay. In any event, the Court is unconvinced it should deny him a stay simply because he has managed to toll the limitations period thus far. Certainly, a dismissal without prejudice at this time would subject him to the potential risk for untimeliness if he is forced to file his federal petition at some later date. Furthermore, the second post-conviction relief application raising a new claim and the State's opposition to the application could reasonably confuse a petitioner about whether that state court filing would be considered timely and justify filing a protective federal petition. *See Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005).

Accordingly, for the reasons expressed, a stay of these proceedings is warranted.

## **RECOMMENDATION**

**IT IS RECOMMENDED** that Malbrough's Motion for Stay and Abeyance, Rec. Doc. 6,

---

[5] Without the state-court record, the Court cannot conduct a thorough timeliness review. However, from a somewhat limited review of the documents before the Court at this time, it appears that his state conviction and sentence became final on May 25, 2014, thirty (30) days after the court of appeal rendered its decision on direct appeal, because he seek further review in the Louisiana Supreme Court. He allowed 330 of the 365 days in his federal limitations period to run before he filed his post-conviction relief application with the state district court on or about April 21, 2015. If he timely sought relief at each level of state review, he would have the remaining time in which to file his federal petition.

be **GRANTED** and that the **CLERK OF COURT** be instructed to mark this action **CLOSED** for all administrative and statistical purposes, pending full and final exhaustion of the claims for relief presented in his federal petition that are currently pending before the state courts.

**IT IS FURTHER RECOMMENDED** that Malbrough be required to file a motion to reopen this matter within thirty (30) days after finality of all state post-conviction review through the Louisiana Supreme Court related to the unexhausted claims presented in his federal petition that are currently pending before the state courts.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc).[6]

New Orleans, Louisiana, this   3rd   day of   January  , 2018.

MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

---

[6] *Douglass* referenced the previously applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to 14 days.